UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID ZAIRE,

                            Plaintiff,

    - v -                                                     Civ. No. 9:03-CV-00629
                                                                                   (FJS/RFT)

JOHN/JANE DOE, Deputy Commissioner/Designee for
NYS Department of Correctional Services, and THOMAS
WELCH, Correction Counselor at Clinton Correctional
Facility,

                            Defendants.

**APPEARANCES:**                                         **OF COUNSEL:**

DAVID ZAIRE
Plaintiff, *Pro Se*
83-A-2242
Elmira Correctional Facility
Box 500
Elmira, NY 14902

HON. ELIOT SPITZER                            MARIA MORAN, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Defendant Welch
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT RECOMMENDATION and ORDER

    *Pro se* Plaintiff David Zaire brings a civil action pursuant to 42 U.S.C. § 1983, alleging that John/Jane Doe ("Doe") violated his First Amendment rights when Doe "knowingly and vindictively retaliated" against Plaintiff and violated his Fifth Amendment rights when Doe "willfully, knowingly, and vindictively maintained the plaintiff at a hardship traveling distance" from his

family in two prison transfers; Plaintiff also alleges that Thomas Welch violated his First Amendment rights when Plaintiff's records were changed in regards to a therapeutic program in retaliation for a previous federal civil rights claim brought by Plaintiff. Dkt. No. 1, Compl. at ¶ 19. Defendant Welch brings this Motion for Summary Judgment. Dkt. No. 22. For the reasons to follow, it is recommended that the Motion for Summary Judgment be **denied**.

## I. FACTS

Plaintiff previously filed a federal lawsuit, *David Zaire v. Muller*, 9:98-CV-1838, in the Northern District of New York. Def.'s 7.1 Statement at ¶ 14; *see also* 9:98-CV-1838, Dkt. Nos. 1, Compl. & 52, Am. Compl. After a jury trial, a verdict was returned in Plaintiff's favor on June 21, 2002.[1] Def.'s 7.1 Statement at ¶ 14, Maria Moran Affirm., Ex. 1, Mem. and Order, dated Nov. 18, 2002; *see also* 9:98-CV-1838, Dkt. Nos. 63, Jury Verdict & 64, Judgment. Upon the verdict, Plaintiff moved, in part, for declaratory and injunctive relief, which was granted.[2] Def.'s 7.1 Statement at ¶ 14, Moran Affirm., Ex. 1, Mem. and Order at pp. 1-2; *see also* 9:98-CV-1838, Dkt. No. 72, Mem. and Order, dated Nov. 18, 2002.

Prior and subsequent to Plaintiff's previous lawsuit, Plaintiff was incarcerated at Clinton Correctional Facility ("Clinton") from May 10, 2001 until October 4, 2002. Def.'s 7.1 Statement at ¶ 2. During that period of time, Thomas Welch was Plaintiff's Correction Counselor. *Id.* Plaintiff's incarceration was a result of convictions which included rape in the first degree and

---

[1] Plaintiff was awarded "$1.00 in damages as to three of the four defendants." Def.'s 7.1 Statement, Maria Moran Affirm., Ex. 1, Mem. and Order, dated Nov. 18, 2002, at p. 1; *see also* 9:98-CV-1838, Dkt. No. 72, Mem. and Order, dated Nov. 18, 2002.

[2] In Plaintiff's claim for declaratory and injunctive relief, he sought to participate in the Family Reunion Program ("FRP"); however, the Defendants' position in that case was that Plaintiff first needed to complete the Sexual Offender Program ("SOP") in order to qualify for FRP. Def.'s 7.1 Statement, Moran Affirm., Ex. 1, Mem. and Order at pp. 1-2; *see also* 9:98-CV-1838, Mem. and Order, dated Nov. 18, 2002.

sodomy in the first degree. *Id.* at ¶ 3.

Sexual offenders are to participate in Sexual Offender Program ("SOP"). *Id.* at ¶ 4. SOP is not offered at Clinton. *Id.* at ¶ 5. On July 8, 2002, Welch met with Plaintiff regarding a SOP consent form, which is a document for the agreement to participate in the sex offender counseling program; the form was signed by Welch but Plaintiff's signature was not on the document. *Id.* at ¶ 6; Dkt. No. 22, Thomas Welch Aff., Ex. A, Clinton SOP Form. In Plaintiff's Quarterly Review for the period of May 4, 2002 to August 26, 2002, Welch noted on the document that Plaintiff refused to accept SOP on July 8, 2002 and August 27, 2002; Plaintiff did not sign the Quarterly Review. Def.'s 7.1 Statement at ¶ 7; Welch Aff, Ex. B, Inmate Review Worksheet, dated Aug. 27, 2002.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).  Furthermore, "[a] dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Young v. Corbin*, 889 F. Supp. 582, 584 (N.D.N.Y. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. John/Jane Doe

This Court previously stated to Plaintiff that "[i]n order to pursue his claim against 'John Doe' Defendants, Plaintiff must take reasonable and expeditious steps to ascertain their identities and then file a motion to amend seeking leave of the Court to bring such named individuals into this action." Dkt. No. 4, Order, dated May 29, 2003. The U.S. Marshals also noted they could not serve John/Jane Doe as they were not named. Dkt. No. 5. On January 16, 2004, the Honorable Frederick J. Scullin, Chief United States District Court Judge, issued an Order whereby it was noted that Plaintiff had provided an affidavit stating he had submitted a letter to Mr. Anthony Annucci, Deputy Commissioner and Counsel for the Department of Correctional Services, seeking the identities of the "John/Jane Doe" Defendant[s]. Dkt. No. 8, Order, dated Jan. 16, 2004; Dkt. No. 7, David Zaire Aff., dated Dec. 1, 2003, at ¶ 3. Plaintiff further stated that since he received no response to his inquiry, he sent a follow up letter, for which he also did not receive a response. Order, dated Jan. 16, 2004; Zaire Aff. ¶ 4. Judge Scullin ordered that "Plaintiff's request for assistance in ascertaining the identity or identities of the 'John/Jane Doe' Defendant(s) is **DENIED WITHOUT PREJUDICE TO RENEW** at a later time." Plaintiff made no further application to the Court.

However, Plaintiff, in his Response to the Motion for Summary Judgment, asks the Court not to dismiss the action as to the "John/Jane Doe" Defendants but Plaintiff also does not make a formal motion for court intervention. Dkt. No. 23, David Zaire Affirm. at p. 4. Plaintiff does submit three letters, dated August 28, 2002, July 14, 2003, and August 4, 2003, whereby he attempted to ascertain the identities of the "John/Jane Doe" Defendants. *Id.*, Ex. A. Nevertheless, the Court is unaware of any steps taken by Plaintiff subsequent to Judge Scullin's January 16, 2004 Order to identify the "John/Jane Doe" Defendants. To that extent, Plaintiff may file a motion for

court intervention to aid in his identification of the "John/Jane Doe" Defendants. If Plaintiff chooses to file the motion, Plaintiff is to provide the Court with information as to his attempts to ascertain the identities after the issuance of the January 16, 2004 Order.

### C. Eleventh Amendment

Plaintiff brings suit against Defendant Welch in his official capacity and, although Plaintiff does not specifically state that he is suing Defendant in his individual capacity, it will be assumed as prisoners suing pursuant to § 1983 normally sue in both capacities. Compl. at ¶ 3. Plaintiff seeks punitive damages against Defendant Welch in his individual and official capacities. *Id.* at ¶ 21.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity. *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2000). The state's immunity extends to state officials "act[ing] on behalf of the state" when the state is the "'real, substantial party in interest.'" *Id.* at 69-70 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.*, 506 U.S. 139, 142-47 (1993) & quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). Moreover, the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Therefore, Defendant Welch cannot be sued in his official capacity in a claim for money damages. However, Zaire may seek damages from him in his individual capacity.

**D. Exhaustion of Remedies**

Plaintiff states that he exhausted his remedies in regards to his retaliatory and false entries claims against Welch. Pl.'s 7.1 Statement at ¶ 13. Defendants allege, however, that Plaintiff did not file a grievance or appeal as to this claim for either the July or August 2002 incidents. Def.'s 7.1 Statement at ¶ 13.

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections has created a three-step process to exhaust all administrative remedies available to inmates. *See Abney v. McGinnis*, 380 F.3d 663, 668 (3d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within fourteen (14) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(a)(1). The complaint is then submitted to the IGRC to review the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(a)(2)-(5). Second, if the inmate appeals the IGRC decision, then the inmate may appeal to the Superintendent. *See* N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(b). Third, if the inmate appeals the Superintendent's determination, the CORC is to make a final administrative determination. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(c). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d

896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001); *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

If a prisoner's grievance "'presents the relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances to put the prison on notice of potential claims and to fulfill the basic purposes of the exhaustion requirement . . . [then] there does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level. *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (quoting *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1134-35 (S.D.Cal. 2001) and further citing *Lewis v. Washington*, 197 F.R.D. 611, 614 (N.D.Ill. 2000)); *see also Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731 (2001) for the proposition that the PLRA requires prisoners to exhaust a *process* and not a *remedy*). Indeed, New York State's regulations prescribing the content to be included in a prisoner grievance states that in addition to administrative information, such a grievant's name and housing unit, the grievance "must contain a concise, specific description of the problem and the action requested . . . ." N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(a)(1)(I).

Here, Plaintiff states he did grieve and appeal his claim of retaliation and false entries against Welch in complaint BRL-5893-02, which is entitled "Wants Transfer to Downstate HUB." Pl.'s 7.1 Statement at ¶ 13; Dkt. No. 22, Thomas Eagen Aff., Ex. A at p. 4. This complaint was appealed to the CORC. Eagen Aff. at ¶ 4. However, this Court cannot ascertain the contents of the complaint as neither Plaintiff nor Defendant provided documentation of that complaint and the title does not provide any insight as to whether the complaint was against Welch. Furthermore, the Court cannot deem Plaintiff's claim as unexhausted as the grievance complaint may very well have

brought up the issues of retaliation and forgery.

Therefore, it is recommended that the Motion for Summary Judgment on the issue of exhaustion be **denied**.

### D.  First Amendment Claim

Plaintiff alleges that Welch violated his First Amendment rights when Welch "knowingly, vindictively and maliciously" changed his Department of Correctional Services ("DOCS") records to express a refusal to participate in SOP "in direct retaliation for . . . exercising his right to pursue a federal civil rights claim." Compl. at ¶ 19.

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Id.* at 139 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

Here, since Defendant Welch "does not dispute that an inmate may file a civil right lawsuit,"

the first element is not at issue. Dkt. No. 22, Def. Mem. of Law at p. 6. However, Welch does repugn the existence of a causal connection between the protected activity, the filing of a lawsuit, and the actions taken by Welch. *Id.*; *see also Bennett*, 343 F.3d at 137. Welch also disputes that he subjected Plaintiff to any adverse actions. Def. Mem. of Law at p. 6.

Defendant Welch states that DOCS policy requires inmates who are convicted as sex offenders to sign a SOP participation consent form to stay eligible for early release and that the form must be signed before there the prisoner can be transferred to a facility with the program.[3] Def.'s 7.1 Statement at ¶¶ 4 & 5; Welch Aff. at ¶ 2. Plaintiff states he not aware of any such DOCS policy and he disputes that the form must be signed in order to receive a transfer. Pl.'s 7.1 Statement at ¶¶ 4 & 5. Plaintiff notes that on two occasions, November 9, 2000 and September 17, 2002, transfer requests were made without signing the SOP consent form. *Id.* at ¶ 5.

On July 8, 2002, Welch submits that he approached Plaintiff with an opportunity to sign the SOP consent form but that Plaintiff had refused. Def.'s 7.1 Statement at ¶ 6; Welch Aff. at ¶ 3. Plaintiff, on the other hand, contends that Welch insisted that he "sign a declaration of refusal of the SOP" and then proceeded to "fill[] out the refusal on his own when Plaintiff would not comply with his demand." Pl.'s 7.1 Statement at ¶ 6. Plaintiff states that when he questioned Welch as to the need to sign an SOP refusal, Welch's response was "because you pushed the issue. Now you have to put up or shut up." Dkt. No. 23, David Zaire Affirm. at p. 2. Plaintiff claims that the timing of this statement "was obviously connected to Plaintiff's just-completed litigation." Zaire Affirm. at p. 2. The verdict had been returned on June 21, 2002. Moran Affirm., Ex. 1, Mem. and Order at p. 1. On August 27, 2002, Plaintiff met with Welch in regards to Plaintiff's Quarterly Review. Pl.'s 7.1

---

[3] A copy of the policy was not provided to the Court.

Statement at ¶ 7; Def.'s 7.1 Statement at ¶ 7; Welch Aff. at ¶ 4.  At that time, the SOP consent form was discussed; however, Welch contends that while he provided Plaintiff with another opportunity to sign the form, Plaintiff refused to sign it.  Def.'s 7.1 Statement at ¶ 7; Welch Aff. at ¶ 4.  Notwithstanding, Plaintiff alleges that Welch was "attempting to obtain a signed refusal . . . in order to nullify entries previously made in Plaintiff's records[.]"  Pl.'s 7.1 Statement at ¶ 7.

Plaintiff claims that Welch's entries on July 8 and August 27, 2002, were false and in retaliation for Plaintiff's previously filed lawsuit, *David Zaire v. Muller*.  Welch Aff. at ¶ 9; Zaire Affirm. at p. 2.  Welch avers that he "was not aware of the outcome or substance of any legal actions [Plaintiff] was pursuing while he was at Clinton."  Welch Aff. at ¶ 9.  Plaintiff, on the other hand, purports that prior to trial on the *Muller* case, he participated in three telephone conversations with his attorney regarding the issues of the trial while at Clinton.  Zaire Affirm. at p. 2.  Furthermore, Welch "was present on each occasion and remained inside the small cubicle office where the conversations were held, sitting just three feet away[.]"  *Id.*

Plaintiff has met his initial burden of producing sufficient evidence to raise a question of material fact about whether retaliation was a substantial factor in the entries refusing to participate in SOP.  The temporal proximity between the favorable verdict of his lawsuit and the alleged retaliation provides circumstantial evidence of retaliation.  *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).  The verdict was rendered on June 21, 2002.  The first attempt to obtain a signature on the SOP consent form occurred on July 8, 2002, only about two weeks after the verdict.  Welch also attempted to obtain Plaintiff's signature on August 27, 2002 during the Quarterly Review.  And despite the fact that the jury trial had ended, Plaintiff had an outstanding motion for attorney's fees, reimbursement costs, and declaratory and injunctive relief, which may have possibly influenced

Welch. Moran Affirm., Ex. 1, Mem. and Order; Zaire Affirm. at p. 3.

As Plaintiff has met his burden, Defendant Welch may still be entitled to summary judgment if he can prove, by a preponderance of the evidence, that he would have taken the same action in the absence of Plaintiff's prior lawsuit. Welch provides an affidavit whereby he presents reasons for the need for an SOP consent form. Welch submits that it is standard DOCS policy to require convicted sexual offenders, "who are roughly two to three years away from their earliest release date, sign a Sexual Offender Program . . . participation consent form to remain eligible for early release." Welch Aff. at ¶ 2. Welch further states that prisoners are requested to sign the consent form before a prisoner can be transferred to another facility to enroll in SOP. *Id.* Refusal to sign the consent form is interpreted as a refusal to participate in the program. *Id.* at ¶ 3. Defendant Welch also states that one of the criteria to enter SOP is that the participant must accept his or her sexual offenses and that because Plaintiff maintains his innocence, "DOCS policy construes the plaintiff's unwillingness to admit his sexual crimes as a refusal of the program." *Id.* at ¶ 5. However, Welch points to no specific DOCS policies regarding SOP. Furthermore, Welch did not provide any copies of the DOCS policies to which he makes reference. Plaintiff states that up until his favorable verdict in *David Zaire v. Muller*, Welch "had been routinely acknowledging that the SOP was a moot issue" by placing Program Not Available ("PNA") entries on the quarterly evaluations for February 2002 and May 2002. Zaire Affirm. at p. 2; Welch Aff., Ex. B, Inmate Review Worksheet, dated Aug. 27, 2002. Defendant Welch has not met his burden of establishing as a matter of law that he would have taken the same action in the absence of Zaire's First Amendment activity.

Therefore, it is recommended that the Motion for Summary Judgment be **denied**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 22) be **DENIED**; and it is further

**ORDERED**, that Plaintiff may, if he chooses, file a motion for court intervention to aid in his identification of the John/Jane Doe Defendants; such motion shall be filed no later than April 7, 2006.  Should Plaintiff fail to file such motion, the Clerk is directed to forward this matter to the undersigned for the issuance of a report-recommendation wherein the Court will recommend dismissal of the claim against the John/Jane Doe Defendants which will be deemed abandoned; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 22, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge