UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID ZAIRE,

                               **Plaintiff,**

          v.                                     9:03-CV-629
                                                   (FJS/RFT)

JOHN/JANE DOE, Deputy Commissioner/Designee for
NYS Department of Corrections; and THOMAS WELCH,
Corrections Counselor at Clinton Correctional Facility,

                               **Defendants**.
_____

**APPEARANCES**                                          **OF COUNSEL**

**DAVID ZAIRE**
**83-A-2242**
Clinton Correctional Facility
Box 2000
Dannemora, New York 12929
Plaintiff, *pro se*

**OFFICE OF NEW YORK STATE**                    **MARIA MORAN, AAG**
**ATTORNEY GENERAL**
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204
Attorneys for Defendant Welch

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his First

Amendment rights.  Specifically, Plaintiff alleges that Defendant Welch violated his First

Amendment rights when he changed and/or falsified[1] Plaintiff's Department of Correctional Services' ("DOCS") records with respect to a therapeutic program in retaliation for Plaintiff's pursuit of a previous federal civil rights action.[2] *See* Complaint at ¶ 19; Report-Recommendation and Order at 2.

Currently before the Court are Defendant Welch's objections to Magistrate Judge Treece's Report-Recommendation and Order. Defendant Welch objects to Magistrate Judge Treece's recommendation that this Court deny his motion for summary judgment on Plaintiff's First Amendment retaliation claim because Magistrate Judge Treece neglected to address the second element of Plaintiff's claim, i.e., whether Defendant's actions were adverse. *See* Defendant Welch's Objections at 1-2.

## II. BACKGROUND

Plaintiff previously filed *Zaire v. Muller*, 9:98-CV-1838, in this District. That case proceeded to trial, and the jury returned a verdict in Plaintiff's favor on June 21, 2002. Plaintiff then moved, in part, for and was granted declaratory and injunctive relief.[3] He then filed a motion to

---

[1] In his motion papers Plaintiff uses the term "changed;" however, in his complaint, he indicates that Defendant made false entries in his record. *See* Complaint at ¶¶ 16-18.

[2] Plaintiff's complaint also names John/Jane Doe as Defendants. Two of Plaintiffs three causes of action pertain to John/Jane Doe. In his Report-Recommendation and Order, Magistrate Judge Treece ordered that "Plaintiff may, if he chooses, file a motion for court intervention to aid in his identification of John/Jane Doe Defendants . . . ." *See* Report-Recommendation and Order at 13. Plaintiff did file a motion for court intervention and that motion is currently pending before Magistrate Judge Treece. *See* Dkt. No. 26.

[3] Magistrate Judge Treece noted that, "[i]n Plaintiff's claim for declaratory and injunctive relief, he sought to participate in the Family Reunion Program ("FRP"); however, the Defendants'
(continued...)

hold the defendants in that case in contempt for not complying with the district court's order; the court denied that motion. From May 10, 2001, until October 4, 2002, Plaintiff was incarcerated at Clinton Correctional Facility ("Clinton"). During his incarceration at Clinton, Plaintiff's Correction Counselor was Defendant Thomas Welch.

On July 8, 2002, Defendant met with Plaintiff regarding a Sexual Offenders Program consent form, a document signifying agreement to participate in that program. Defendant's signature is on the document, but Plaintiff's is not. Defendant also noted in Plaintiff's Quarterly Review for the period from May 4, 2002, through August 26, 2002, that Plaintiff refused to accept the Sexual Offenders Program on July 8, 2002, and August 27, 2002. Plaintiff's signature is not on the quarterly review.

### III. DISCUSSION

**A.    Standard of Review**

*1. Review of Report-Recommendation and Order*

"When a district court evaluates the report and recommendation of a magistrate judge, the court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.'" *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting 28 U.S.C. § 636(b)(1)). A party "'may object to the findings or recommendations of the magistrate judge'" within ten days of being served with the report and recommendation. *Id.* (citations omitted). When neither party files objections, "'a district court need only satisfy itself that

---

[3](...continued)
position in that case was that Plaintiff first needed to complete the Sexual Offender Program ("SOP") in order to qualify for FRP." *See* Report-Recommendation and Order at 2 n.2.

there is no clear error on the face of the record'" to accept the report and recommendation. *Id*. (quoting *Nelson v. Smith*, (S.D.N.Y. 1985) 618 F. Supp. 1186, 1189). However, "'[w]hen an objection is raised, the court is required to conduct a *de novo* review of the contested sections.'" *Id.* at 170 (quoting *Pizarro v. Bartlett* (S.D.N.Y. 1991) 776 F. Supp. 815, 817).

### *2. Summary Judgment*

A court may grant summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Dibble v. Fenimore*, slip copy, No. 1:97-CV-1256, 2006 WL 1373061, *3 (N.D.N.Y. May 15, 2006) (quotation and other citation omitted). The court must resolve all ambiguities and draw all rational inferences of fact in favor of the nonmoving party. *See id.* (citation omitted). "A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Young v. Corbin*, 889 F. Supp. 582, 584 (N.D.N.Y. 1995) (quotation omitted). "Once the movant . . . has established a prima facie case demonstrating the absence of a genuine issue of material fact, the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-moving party." *Id.* (citation omitted). Finally, "sworn statements are more than mere conclusory allegations subject to disregard . . .; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**B.     Exhaustion of Administrative Remedies**

Magistrate Judge Treece recommended that the Court deny Defendant's motion for summary judgment to the extent that it was based upon the assertion that Plaintiff has failed to exhaust his administrative remedies.  After stating the law pertaining to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997(e)(a), and describing the New York State Department of Correctional Services' three-step process for exhausting all administrative remedies available to inmates, Magistrate Judge Treece examined the facts and evidence that both parties had presented.  *See* Report-Recommendation and Order at 7-9.  Magistrate Judge Treece noted that Plaintiff stated that he had grieved and appealed his claims of retaliation and false entries against Defendant in grievance BRL-5893-02 entitled "Wants Transfer to Downstate HUB," which is contrary to Defendant's assertion that Plaintiff failed to file a grievance regarding these incidents.  *See id.* at 7-8 (citing Plaintiff's 7.1 Statement at ¶ 13; Affidavit of Thomas Egan, dated July 12, 2005 ("Egan Aff."), at ¶ 4 & Exhibit "A" at p. 4; Defendant's 7.1 Statement at ¶ 13).  Furthermore, Magistrate Judge Treece found that the Court could not ascertain the contents of that grievance because neither party provided the Court with a copy of the grievance and its title did not indicate whether the grievance was against Defendant.  *See id.* at 8.  Therefore,, Magistrate Judge Treece found that the Court could "not deem Plaintiff's claim as unexhausted as the grievance complaint may very well have brought up the issues of retaliation and forgery."  *See id.* at 8-9.  Neither party objects to Magistrate Judge Treece's recommendation that the Court deny Defendant's motion for summary judgment on the issue of failure to exhaust administrative remedies.

As Magistrate Judge Treece recognized, under the Prisoner Litigation Reform Act "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Furthermore,

> [s]o long as the prisoner's grievance "present[s] the relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances to put the prison on notice of potential claims and to fulfill the basic purposes of the exhaustion requirement, . . . [t]here does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level."

*Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (quotation and other citation omitted). Additionally, New York only requires the grievance to include "the grievant's name, department identification number, housing unit, program assignment . . . [and] a concise, specific description of the problem and the action requested . . . ." N.Y. Comp. Codes R. & Reg. tit. 7, §701.7(a)(i).

Based upon its review of the record, the Court finds that the conclusion and recommendation that Magistrate Judge Treece reached is not clearly erroneous. Without being able to ascertain the contents of grievance number BRL-5893-02, the Court cannot determine whether Plaintiff's claim is exhausted because, despite the title stating that the grievance is about a request for transfer, the Court cannot determine whether the grievance contained Plaintiff's claims of retaliation and forgery against Defendant, as he states it does. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and denies Defendant's motion for summary judgement to the extent that the motion rests upon Plaintiff's failure to exhaust administrative remedies.

**C.     First Amendment Retaliation Claim**[4]

To maintain a claim for First Amendment retaliation, a plaintiff must demonstrate "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Holmes v. Grant*, slip copy, No. 03 Civ. 3426, 2006 WL 851753, *15 (S.D.N.Y. Mar. 31, 2006) (quotation omitted). Once the plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the defendants 'to show that the plaintiff would have received the same punishment even absent the retaliatory motivation . . . .'" *Bartley v. Collins*, No. 95 Civ. 10161, 2006 WL 1289256, *4 (S.D.N.Y. May 10, 2006) (quotation and other citation omitted). If the defendant demonstrates that the plaintiff would have received the same punishment absent retaliatory motive, the plaintiff's claim fails.

*1. Protected-Speech Prong*

With respect to the protected-speech prong of a retaliation claim, it is well established that "[p]risoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Id*. (citations omitted). Plaintiff's filing of the civil case *Zaire v. Muller* is protected conduct. *See Gill v. Pact Org.*, No. 95 Civ. 4510, 1997 WL 539948, *12 (S.D.N.Y. Aug. 28, 1997) (citation omitted). Accordingly, the

---

[4] Magistrate Judge Treece found that, under the Eleventh Amendment, Plaintiff could not sue Defendant Welch in his official capacity. *See* Report-Recommendation and Order at 6. Defendant Welch states that he does not object to this finding and asks the Court to dismiss the claims against him in his official capacity. Plaintiff filed no objections. Accordingly, the Court adopts Magistrate Judge Treece's finding that Plaintiff cannot sue Defendant Welch in his official capacity.

Court adopts Magistrate Judge Treece's finding that Plaintiff satisfied the first prong of his retaliation claim.

### *2. Adverse-Action Prong*

To satisfy the adverse-action prong of a retaliation claim in the prison setting, an inmate must show that prison officials took adverse action against him. In this setting, the Second Circuit has "defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchack*, 389 F.3d 379, 381 (2d Cir. 2004) (quotation omitted). However, to prove an adverse-action, a prisoner need not demonstrate an actual subjective chill, i.e., that the defendant's action dissuaded him from further exercising his own rights. *See id.* at 384.

Plaintiff asserts that Defendant retaliated against him for filing a civil action in federal court by changing or falsifying DOCS' records to reflect that Plaintiff refused to participate in the Sexual Offender Program ("SOP"). *See* Complaint at ¶ 19. Plaintiff asserts that Defendant's entries on July 8, 2002, and August 27, 2002, were false and harmed him because DOCS' officials used these entries as a pretext to assert that he was not eligible for the Close-to-Home transfer program, that they subjected him to confiscation of ten-years good behavior allowances,[5] and that they continued his imprisonment past his previous conditional release date of January 12, 2003.[6] *See* Complaint at

---

[5] Plaintiff states that the DOCS' Commissioner noted that Plaintiff "has refused to address assessed needs of the therapeutic program." *See* Complaint at ¶ 18.

[6] Plaintiff's 7.1 Statement and his Complaint list the main harm that Defendant's retaliatory action caused as the denial of his participation in the Close-to-Home Transfer program. However, his complaint includes all of the above-listed injuries.

¶¶ 17-19.

Defendant argues that the entries he made were not an erroneous change of Plaintiff's position towards the SOP program because "the Sexual Offender Program was *not available*, which is quite different from a claim that records were changed to indicate a refusal of SOP if Plaintiff had previously indicated that he would take the program." *See* Defendant's Objections at 2. He further claims that Plaintiff provides no evidence to indicate that he was on a waiting list for the SOP as of July 8, 2002,[7] and that he refused to participate in SOP both before and after his meetings with Defendant. *See id.* Moreover, Defendant argues that his actions were not adverse because they did not deter Plaintiff from filing grievances after the incidents, that his actions were in no way threatening and would not have deterred any other inmate from filing subsequent grievances or lawsuits, and that his actions were simply *de minimus*. *See id.* at 2.

With respect to the circumstances surrounding the documentation of Plaintiff's refusal to participate in SOP, Defendant states that, pursuant to DOCS' policy,[8] he approached Plaintiff on July 8, 2002, and August 27, 2002, provided him with the opportunity to sign the SOP consent form, and informed him that refusing to sign the form was tantamount to refusing the program. *See*

---

[7] Plaintiff notes in his affirmation that he does not allege that he was on an "active waiting list" for SOP as of July 8, 2002. *See* Plaintiff's Affirmation at 2 n.1.

[8] Plaintiff and Defendant provide conflicting views of DOCS' policy regarding SOP consent forms and transfer submissions and the circumstances surrounding the documentation of Plaintiff's refusal to participate in the SOP. Defendant indicates that DOCS' policy states that, in order for Plaintiff to remain eligible for early release, within two or three years of the earliest date for release, Plaintiff must sign an SOP consent. Furthermore, Defendant states that in order to submit a transfer request to a facility with a SOP, the SOP consent form must be signed. *See* Welch Aff. at ¶¶ 2-3. Plaintiff, however, states that he is not aware of any such policies and that he previously has been transferred to facilities offering SOP without signing the form. *See* Plaintiff's 7.1 Statement at ¶¶ 4-5.

Affidavit of Thomas Welch, dated July 12, 2005 ("Welch Aff."), at ¶ 3.  Defendant states that Plaintiff refused to sign the consent form and that he documented Plaintiff's actions on the form just like any other prison official would.  *See id.* at ¶ 3, Exhibit "A."  Contrary to Defendant's account, Plaintiff states that, on July 8, 2002, and August 27, 2002, Defendant did not approach him with an opportunity to sign the SOP consent form.  *See* Plaintiff's 7.1 Statement at ¶ 6.  Rather, Plaintiff states that Defendant insisted that he sign a declaration of refusal of the SOP; and, when he refused to comply, Defendant filled it out himself.  *See id.* at ¶¶ 6-7.  Although Defendant asserts that he did not "change" the DOCS' records to reflect a refusal, Plaintiff's complaint and motion papers indicate that it was not necessarily a change, but a falsification of his refusal.  *See* Complaint at ¶¶ 16-18; Plaintiff's Affirmation at p. 1; Plaintiff's 7.1 Statement at ¶ 6.  Thus, an issue of fact exists as to whether Defendant's alleged action actually occurred.

    Assuming such action did occur, the question is whether a reasonable jury could find such action to be adverse.  Contrary to Defendant's assertion, it is of no consequence whether Plaintiff was deterred from exercising his constitutional rights; rather, the question is whether a similarly-situated inmate would be deterred from exercising his constitutional rights.  Defendant states that his action is not adverse because he was making an accurate and appropriate documentation of the facts.  *See* Defendant's Memorandum of Law at 7.  Defendant also claims his action was *de minimus* and that a similarly situated inmate would not have been deterred from exercising his constitutional rights because of Defendant's actions; however, Defendant offers no evidence to support his claims, except to say that his conduct was in no way threatening and that a similarly-situated inmate would not be deterred from exercising his constitutional rights; he simply concludes that such is the case. *See* Defendant's Objections at 2.  However, if a reasonable jury concluded that Defendant's false

entries resulted in officials denying Plaintiff participation in the Close-to-Home Transfer Program,[9] resulted in a loss of ten-years good behavior allowances, and continued imprisonment past his previous conditional release date, it could also conclude that such consequences would deter a similarly-situated inmate from filing a federal action.

Based upon the above-stated reasons, the Court finds that a reasonable jury could conclude that Defendant took some action against Plaintiff and that his action was adverse because it would deter a similarly-situated inmate of ordinary firmness from exercising his constitutional rights. Accordingly, the Court holds that issues of material fact exist with respect to the adverse-action prong of Plaintiff's retaliation claim.

### 3. Causal-Connection Prong

To satisfy the causal-connection prong of a retaliation claim, an inmate must show "that the protected conduct was a 'substantial or motivating factor' in the prison officials' decision to take action against the plaintiff." *Ciaprazi v. Goord*, No. 9:02 CV 00915, 2005 WL 3531464, *6 (N.D.N.Y. Dec. 22, 2005) (citations omitted). The court may consider a number of factors when determining whether a causal connection exists, including "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." *Holmes*, 2006 WL 851753, at *15 (citation omitted).

Based upon the record, the Court concludes that a reasonable jury could find a causal

---

[9] Plaintiff states that his wife has medical conditions and transfers out of "Shawangunk's lower Hudson Valley would impose hardship traveling distance upon his wife and possibly exacerbate her medical conditions." *See* Complaint at ¶ 7.

connection between Plaintiff's federal civil action and Defendant's actions with respect to the SOP consent form. The temporal proximity between the favorable verdict in Plaintiff's lawsuit and Defendant's alleged retaliation is circumstantial evidence of such retaliation. *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (citation omitted). Plaintiff received a favorable verdict on June 21, 2002, and the first of Defendant's allegedly false notations that Plaintiff had refused to participate in the SOP occurred on July 8, 2002, a mere two weeks later. *See* Affirmation of Maria Moran, dated July 22, 2005 ("Moran Aff."), at Exhibit "1" at 1; Plaintiff's 7.1 Statement at ¶ 6. Furthermore, July 8, 2002, was the first time Defendant approached Plaintiff about SOP; previous entries on the quarterly review indicate that in February 2002 and May 2002 the program was not available. *See* Welch Aff. at Exhibit "B." In addition, although Defendant states that he was not aware of the outcome or substance of any legal actions that Plaintiff was pursuing while he was at Clinton, Plaintiff contradicts this statement, indicating that he and his attorney had three different telephone conversations about his federal civil action, *Zaire v. Muller*, and that Defendant was present on each occasion and remained inside the cubicle office where the conversations were held and sat three feet away from Plaintiff. *See* Plaintiff's Affirmation at p. 2. Additionally, Plaintiff states that his attorney had at least three conversations with Defendant regarding DOCS' policies relating to issues raised in *Zaire v. Muller*. *See id.* Moreover, Plaintiff claims that his attorney had a conversation with Defendant on July 8, 2002, regarding her need to speak to Plaintiff about post-trial motions. *See id.* Finally, Plaintiff contends that, when he questioned Defendant about the sudden need to have him sign an SOP consent form, Defendant replied "'[b]ecause you pushed the issue. Now you have to put up or shut up.'" *See id.* Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff had established a causal connection between

Defendant's alleged falsification of Plaintiff's DOCS' records and Plaintiff's successful federal action. Accordingly, the Court concludes that Plaintiff has raised material issues of fact as to the existence of a causal connection between his federal civil rights action and Defendant's alleged retaliatory act of falsely noting on the SOP consent form that Plaintiff has refused the program.

### 4. *Defendant's Burden*

Defendant states that "DOCS policy requires that convicted and incarcerated sex offenders, who are roughly two to three years away from their earliest release date, sign a Sexual Offender Program . . . participation consent form to remain eligible for early release . . . [and] because SOP is not offered at Clinton, inmates are requested to sign a consent form for SOP before transfer to a facility with the program will be submitted," and that refusal to sign is interpreted as a refusal to participate in the program. *See* Welch Aff. at ¶¶ 2-3. On the other hand, Plaintiff asserts that he was not aware of any such DOCS' policy and disputes that the form must be signed in order to receive a transfer because on two occasions, November 9, 2000, and September 17, 2002, he submitted transfer requests without signing the SOP consent form. *See* Plaintiff's 7.1 Statement at ¶¶ 4-5. Furthermore, Plaintiff states that he has been eligible for early release since November 1997, after his initial parole board hearing, and that he has appeared before the parole board for early release on three subsequent occasions. *See* Plaintiff's 7.1 Statement at ¶ 4.

Finally, Defendant asserts that part of the criteria for the SOP is that an inmate admit his sexual offense and that the demonstration of acceptance of responsibility is integral to the successful completion of SOP; and, therefore, an inmate's unwillingness to admit his sexual crimes is construed as a refusal of the SOP. *See* Welch Aff. at ¶ 5. However, Defendant does not cite to any

DOCS' policy or provide the Court with copies of the policies to which he refers. Furthermore, Plaintiff states that, until his favorable verdict in *Zaire v. Muller*, Defendant acknowledged that the SOP was a moot issue by placing "program not available" entries on his quarterly evaluations in February 2002 and May 2002. Although Defendant has submitted documents indicating that Plaintiff had refused SOP when others had offered it to him[10] and that Defendant was not a party to Plaintiff's federal litigation, this does not demonstrate, as a matter of law, that Defendant would have taken the same action against Plaintiff regardless of the outcome of Plaintiff's litigation. Moreover, although Defendant argues that any prison official would document an inmate's refusal to participate in a program, there is an issue of fact with respect to whether Defendant offered Plaintiff the opportunity to participate in the program, Plaintiff refused the program and then refused to sign the refusal form, or whether Defendant demanded that Plaintiff sign a refusal to participate and, when Plaintiff would not comply, filled it out himself. Therefore, the Court finds that Defendant has not demonstrated, as a matter of law, that he would have taken the same action against Plaintiff despite the favorable verdict awarded to Plaintiff in his federal action.

Accordingly, as Plaintiff has created issues of fact regarding the second and third prongs of his First Amendment retaliation claim, the Court adopts Magistrate Judge Treece's recommendation

---

[10] As part of his submissions, Defendant included affidavits from *Zaire v. Muller*. It appears that Defendant submitted these forms to show Plaintiff's continued refusal of SOP and to show that Plaintiff, therefore, refused SOP on the occasions at issue in this case. However, the Court cannot determine, as a matter of law, based upon Plaintiff's alleged prior and subsequent refusals that he necessarily refused an opportunity for SOP when Defendant offered it to him because there is an issue of fact concerning whether Defendant offered SOP to Plaintiff or just demanded that he sign a refusal. Furthermore, according to Plaintiff, one of these affidavits contains a forged signature, and another one has a note from Plaintiff stating that he had never refused SOP. *See* Plaintiff's Affirmation at p. 3 n.1; Moran Aff., at Exhibit "3" at Exhibits "B" & "C."

and denies Defendant's motion for summary judgment.

## IV. CONCLUSION

After carefully considering Magistrate Judge Treece's February 22, 2006 Report-Recommendation and Order, Defendant's objections thereto, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Treece's February 22, 2006 Report-Recommendation and Order is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's claims against him in his individual capacity; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's claims against him in his official capacity; and the Court further

**ORDERS** that the parties contact Magistrate Judge Treece's chambers within **ten (10) days of the date of this Order** to schedule a final pre-trial conference.

**IT IS SO ORDERED**

Dated: July 13, 2006
       Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge